All right. The first case this morning is O'Brien v. Sines. That's case number 416-0363 for the appellate. We have Dawn Duggan appearing in for the appellate, Barbara Snow-Murdo. Did I pronounce that correctly? At least close. Okay. You may proceed, Ms. Duggan. May I please report, counsel? My name is Dawn Duggan with Genske Law Office, attorney for Daniel O'Brien, the plaintiff and petitioner in this matter. This case stems from the trial court denying plaintiff's motion for leave to file an amended complaint adding account for a claim of willful and wanton misconduct, and the trial court's granting of defendant's motion for partial summary judgment as it related to defendant's cell phone records. The petitioner is arguing on appeal that both rulings were in error and that this court should reverse the judgment order in this case and remand this case for a new trial. The first issue in this case is the trial court's error in denying plaintiff's motion for leave to amend this complaint. However, the facts and argument for both issues will be essentially the same, very similar. In this particular case, liability was not an issue. The defendant had admitted liability. The evidence that was presented to the trial court consisted in part of defendant's Sprint cell phone records, which showed that defendant was on her cell phone minutes preceding the accident on May 4, 2010. And counsel, let me jump in here. I have a question. In your view, is the evidence regarding the cell phone usage definitive? And by that I mean, do we clearly have definite evidence as to when it was used, when the use was terminated? On the date in question? Yes. Yes, ma'am. The records did indicate specifically the cell phone records shows phone calls, incoming and outgoing, as well as text messages. And when those calls ended as well, correct? Correct. Okay. Yes. And in this case, the cell phone records clearly showed that in the minutes preceding the time of the accident, and when I say the time of the accident, it is as it is reported on the police report, which was 6.15 p.m. That at 6.09 p.m. Well, do the parties agree that time is accurate? It's... I guess what I'm asking is, could that have been an estimate? Well, it may be safe to assume that when an officer is filling out the police report and responding to a motor vehicle accident, that it might be unlikely that any of the drivers involved may know exactly what time it happened. So it may be that time may have come from when he checked with dispatch to see what time they dispatched him to the scene, which means that the call placed to 911 may have happened and probably happened a few minutes prior. And to refresh my memory here, do we have simply the time on the report, or do we also have when the officer was dispatched, when the call came in? What do we have here, just the time on the report? Just the time on the report, which shows 6.15 p.m. And the cell phone records, again, from 6.09 to 6.12 p.m. show for either incoming and received or outgoing and received phone calls from defendant's cell phone. And those calls had ended prior to the reported time of the accident? Correct. There's no overlap? No. Well, do the records show texting, or is it just incoming and outgoing calls? What the record shows, unfortunately, Sprint, and I think this may apply to most cell phone carriers, they only hold the data for the text messages for 60 days. By the time that we were able to get the records, we did not have access to that data. So that would show specifically the dates and times text messages were sent and received from the phone. What it does show in the records that during the 30-day period encompassing the dates, so it was from April 23, 2010 until May 22, 2010, that 9,429 text messages were sent. Which, if you averaged it based on a 16-hour day, that's about 20 messages, perhaps about 314 text messages per day, about 20 text messages per hour based on a 16-hour day. Do you think that's a little more speculative than the cell phone usage as far as making a call, that the person was possibly on the phone making a call at the time of the accident? I absolutely think that that would, should have been evidence that should have been presented to the jury, absolutely. Simply based on averaging over the course of a month the usage for texting? Not simply based on that, Your Honor. There was, but the testimony or what the evidence that we have, what we know, was that on the evening of May 4, the defendant was driving from a softball game at a local high school to a local restaurant. That she was on the phone while driving minutes before the time of accident as reflected on the motor vehicle accident. She had a graduated driver's license. She was 18 years of age at the time, and that was contrary to statute that disallows the use of cell phones for drivers with a graduated license if they're under the age of 19. We also know that at the time of impact, she was looking down. We know that she was traveling at 40 miles per hour. We know that there was no squealing, no horn honking, and she acknowledges that she did not apply her brakes. So, we submit that the records show not just that she was, her conduct was very willful in using a cell phone, contrary to statute, while driving, which is evident from the records. But also that the jury is allowed to make reasonable inferences from the evidence presented to them, and that they could, in fact, infer that she was looking down. Why was she looking down? What was her explanation? We do not have one. That wasn't broached during the... If my memory serves, she did not recall. But she did deny being on the phone. She did deny being on the phone, and as stated in defendant's brief, she denied being on the phone at the time or preceding the accident. And that is clearly not true, because we do have the records show that phone calls were made and received. If a person sends a text or receives a text, and you want to go back and look at it again, which is, I think, fairly typical. What did I actually say in this text? I'm just going to re-read or read again a text that I either sent or received. Would that show up in the records, or is that considered use of the phone? I believe that's considered use of the phone. I don't know specifically the answer to that question, but I believe that with the text data that is referred to in cell phone records. I think you're right. It's clearly use of the phone, but the record doesn't indicate whether that would show up in the records of the Verizon or AT&T or whatever it is. No, sir. Because it sounds like calls, they show a start time and an end time. And so, if a person is texting, that's not going to necessarily be reflected in a call start time or end time, correct? That's a totally separate inquiry, the texting versus... Well, it's a separate inquiry, but had we been able to get the records within 60 days of the date of accident, it would, in fact, have shown up. Okay. They just don't maintain those records. They maintain the actual phone calls and coming and receiving dates and times. You mean the text that is sent out isn't... There's no showing more than 60 days later that something was sent from this phone? Correct. That's correct. So they just show calls? That's what I'm wondering. The phone bill shows a call between 6.09 and 6.11 p.m. So texting could have occurred, you're telling us, without showing up on the phone bill? That's correct. And to follow up on that... Who testified to that? How do we know this? Well, we had the deposition of the cell phone records custodian, if I may. Yes. I want you to check because I think this is a pretty important point. As opposed to just speculating about it, it seems to me we'd have to have someone with expertise who could say the phone bill showed that the last call was made at 6.11 p.m., but because texting wouldn't show up, received, or sent, the phone could have been used after 6.11 p.m. That's what you're suggesting to us, and I think that's a matter where expert testimony of someone who knows about this is required. If you have it, I'd like to hear it. Yes, and I do agree with that, Judge. Unfortunately, at trial, the evidence that cell phone records were not admitted because the judge didn't rule in favor of defendant's motion. Was there an offer of proof? There was an offer of proof. Did that include expert testimony? No, it did not include any testimony. It included the deposition of Ms. I apologize. How about in support of your motion to let this for the idea about having punitive damages? I'm sorry? Provide it in support of your motion because your theory was she was texting? I'm sorry, Judge, if you could repeat that. Didn't you provide this information in support of your motion seeking to present willful and wanton misconduct as an argument to the jury? Yes. So this was in support of your motion? There was no testimony at either of those hearings. An affidavit, something? There was the, my recollection from reviewing the record, was that there was the cell phone records themselves and the deposition of the cell phone records custodian. So there's nothing in the record and nothing was submitted to the trial judge that says, Judge, she could have been texting and cell phone records wouldn't have shown up. That was the argument of counsel. My question was there was no expert testimony. No, there was no expert testimony. You know, as I like to describe, I've only recently graduated from computer celibate to computer illiterate. So I'm not the standard, but it occurs to me that this is a matter where even people who are much more knowledgeable than I would need to have expert testimony in the point you just made, which sounds to me pretty significant. If I am seeing a cell phone record that says last call of 6-11, your argument that she was on the phone at 6-15 isn't particularly persuasive, unless maybe you could say, well, we have circumstantial evidence she was texting and it wouldn't have shown up the texting receiving her sent at 6-15. Well, if I may just clarify to my earlier statement in response to Justice White's question, in the minutes preceding the accident, which was dated or timed as 6-15, the last call would have ended at 6-12. However, there were phone calls in the records after 6-15. I thought it was 6-11. It was the call that the initiated either received or outgoing at 6-11. According to the testimony of Ms. Ramos regarding the cell phone records, the calls lasted, they're portrayed as one minute if they last 60 seconds or less. So it could have lasted up to 6-12. Okay, so let's call 7-6-12. Three minutes is a long time as you're driving along. I mean, if I've made cell phones or done things three minutes before an accident occurs,  I need to know what this evidence shows. And how can we conclude that the argument you just made to us has merit if there's no expert testimony in this record? Well, the testimony, I hear what Your Honor is saying. However, our position is that the trial court should have allowed testimony to be presented to the jury regarding these cell phone records and that he erred in where we could have presented that testimony and that circumstantial, because it is circumstantial. Well, would that testimony, if allowed, address the question that Justice Feigen is asking about? It potentially could have with the custodian of records in explaining how those records are. Well, it seems to me to be, absent expert testimony, it seems to me to be evidence that refutes your contention. Judge, she wasn't on the phone at 6-15. We know it. Here are the phone records. The last phone use was possible at 6-12. And I'm the trial judge. Why would that be a persuasive argument to me? Well, our argument would be is that if there's any evidence that could tend to show, to prove what we are alleging in this case, that there were numerous voluminous text messages throughout that surrounding, for that entire period, when on average it's 314 text messages per day. See, the problem with the phone records is that they would rebut that claim. You would have a better claim if there were no phone records at all. Perhaps. But when it says at 6-11 or 6-12 is the last call in the accident, according to what everyone says occurred at 6-15, that's three minutes later. Three minutes while driving the car is a long time, and there's no reason to infer that absent any record she's still on the phone. I don't understand why this is something the jury should be permitted to infer in the face of the records that say no. Well, again, as we discussed before, the time reflected on the motor vehicle accident report, 6-15, is not necessarily the time of the accident. It is the time. Wasn't your position argued to the trial court the accident was at 6-15? I think that the counsel that made the argument in these hearings to the trial court said roughly around that time. I thought the position was this accident occurred at 6-15, Judge. I thought that was the position of the plaintiff at trial. I don't believe it was. Well, maybe I'm mistaken. I don't know. Go ahead. I was not counsel at trial, so I apologize. Ms. Duggan, before we leave this, I want to make sure I understand your argument. It is, as I get it, that if the expert had been allowed to testify, the expert would have said, yes, we can pinpoint the phone calls, but we don't have records which would indicate whether she was or was not on the phone texting at 6-15. Is that what you're arguing? That is correct, and only because we missed that time cutoff. But the testimony would state how many texts were within that period of the 30 days surrounding that, and our position is that it is evidence that the jury could, as a reasonable person, infer from those facts, combined with the testimony of witnesses, including the defendant, that she was going 40 miles an hour, never applied her brakes, and was looking down and doesn't offer an explanation as to why, does not recall why, but that she was looking down at the time, which could lead a reasonable person to conclude, had she been on the phone a few minutes prior to the time reflected on the accident report, given all the numerous text messages received during that time period, that she was on the phone, or looking at her phone. And in your offer of proof, did you offer to the trial court what Justice Turner has just said, that judge, we have an expert, or this person would testify, that with respect to the text messages, we don't have any information as to whether she was or was not on the phone because of the passage of the time. Was that offered to the trial court? I believe that was, judge, during the motion for the plaintiff's motion for leave to amend the complaint. Unfortunately, we do not have a transcript, there was not a court reporter, nor the recorder operating at the time the motion for summary judgment was heard. What is the standard review for this court regarding the trial court's denial of the section 2-604.1 of the motion to seek punitive damages? It is our position that because there was no actual testimony given in that hearing, it was all documentary submissions to the court, so credibility was not an issue that the standard review would be de novo. Any case law at this point? Yes, Your Honor, and I believe it was cited in Plaintiff's Reply Brief. Specifically, forgive the pronunciation, Stokovich v. Monk. Did you raise this issue as error in your post-trial motion? I'm sorry, judge? Did you raise this issue as error in your post-trial motion? Yes, sir, I believe we did. Thank you. And to go back to the argument and to address the motion for summary judgment, many of those same facts that we've just discussed is what we're arguing here today. That this is clearly all the facts that I've just given, Your Honors, regarding the cell phone records, the text messages, the calls placed, the fact that it was obvious willful misconduct just being on the phone while driving, contrary to statute. Assuming for the moment that this is established, assuming for the moment that there's evidence to suggest or demonstrate that she was texting while driving, is this a matter that can be addressed to the trial court's sound discretion deciding whether or not willful and wanton misconduct applies in that situation? As opposed to just, it's careless, it's negligent, but does it rise to the level of willful wanton? I believe that, yes, obviously I believe that the trial court made the decision in granting or denying our motion of relief that it was not willful and wanton. However, the case law seems pretty clear that willful and wanton misconduct only need be degrees more than ordinary negligence. The Supreme Court in 1990 said, willful and wanton misconduct approaches the degree of moral blame attached to an intentional harm. Since the defendant deliberately inflicts a highly unreasonable risk of harm upon others and conscious disregard of conduct must be outrageous, because the defendant's acts are done with an evil motive, because they're done with reckless indifference to the rights of others. It seems to me that a good argument can be made that even if what you assert is true, that this falls short of willful and wanton misconduct, doesn't it? Well, I respectfully disagree, Your Honor, and because public policy, I believe, is clearly on our side. The numerous rules and laws that have been enacted illegalizing any use of cell phone, period, unless it's hands-free, Illinois included being one of those states that have enacted that. So all uses of cell phones and an accident result would be willful and wanton misconduct? If, in fact, especially in this circumstance, when we're dealing with a defendant who was on a graduated driver's license, Why does that matter? Because statute specifically precludes a person with a graduated driver's license from using cell phones. But the statute makes no difference. It would be just as unlawful for me under the statute to be using my cell phone while driving as it is for the graduated driver, would it not? Yes, it would. So then it's not a factor regarding the statute you cite. Well, I think it is a factor. I think it is a factor because while Your Honor may be using a cell phone, if you're using hands-free or abiding by the law using a cell phone and you have an accident. If I'm abiding by the law, then the statute doesn't apply. But I want to go back. It seems to me your position is any time a driver is using a cell phone, not a hands-free phone, covered by the statute and an accident results, your theory is that's always willful and wanton misconduct. Isn't that what you're arguing to us? No, that's not what I'm arguing. Give me an example where it wouldn't be willful and wanton misconduct for someone to be driving, holding a cell phone in violation of the statute and an accident occurs. I can't give you an, I can't. Ms. Duggan, why don't you think about that and maybe you can give an example when you come back for your rebuttal because we're way past our scheduled time. Thank you. May it please the Court, Counsel. Counsel, I know you're just getting settled, but I want to ask you a question. Justice Steigman asked whether or not the issue of wanting to file the amended complaint seeking punitive damages, if that was raised in a post-trial motion. Was that raised? My recollection was that it was raised in the post-trial motion. I believe I would have made a forfeiture argument with respect to that if it were not. You did. Okay. Well, actually my forfeiture arguments with respect to amendment of the pleadings were that they pleaded over it by filing a subsequent amended complaint that didn't incorporate or reference those prior attempted claims for willful and wanton conduct and punitive damages that they had waived it by essentially pleading over it. And secondly, that there was no appellate record of the basis for the trial court's ruling. I don't believe I specifically raised it as a failure to include it in the post-trial motion. By the way, that's not an amplifying, it's a recording microphone, so it will be necessary to speak up. I will. Thank you for letting me know. In this case, the trial court properly denied plaintiff's attempt to add willful and wanton misconduct claims and punitive damages claims to the complaint and properly entered partial summary judgment for the defendant on the issue of alleged cell phone usage. At every stage of the case, plaintiff failed to come forward with any admissible evidence, circumstantial or otherwise, that would have supported an inference that defendant was using her cell phone at the time of this accident. Well, let me stop you there. How could she have done so if the records don't reflect whether or not texting was going on at the time of the accident? Well, there is no evidence to support it. And the defendant specifically denied it. But wouldn't it be something the jury should at least know about that there's no proof that texting was going on, but there's no proof that there wasn't, because there aren't any records. That's basically what I'm asking. Shouldn't they know there just aren't any records to determine whether texting was occurring, based on the number of times that this particular person used? Well, but that's just it. That's where we get into a really prejudicial issue. Informing the jury that there was this large number of texts over a 30-day period, a 30-day period that is the majority of which is after the accident occurred. So you're basically making assumption based on assumption based on speculation to try to get to the point where the jury can conclude that my client was texting at the time of the accident. And that's just not correct. Let me ask you two, which I think are key questions that Ms. Duggan, I don't know, gave me a definitive response to. The first is, what was the position at trial of the parties with regard to when the accident occurred? Was it correct, it's my understanding, correct, maybe not, that the plaintiff's position at trial was the accident occurred at 6.15 p.m.? That's my recollection as well. The plaintiff was deposed in the case, and he testified in his discovery deposition that the time of the accident marked in the police report as 6.15 was accurate to his knowledge. Well, more specifically, not just his testimony, but that was the plaintiff's position to the trial court as well, judge, this accident occurred at 6.15? Yes. At both the stage of the... Hearing of the motion? In both of the motion hearings, yes. That's very important to me as I look at these records. And the second question is the question I asked Ms. Duggan, what about this whole business of any expert testimony on the question of what the phone records contain? There was none. Phone records to me, if it says the last use is at 6.12, mean the last use is at 6.12. She attempted to draw a distinction, which for all I know could be accurate. You know, that's not a rhetorical question. That's phone calls, not texting. The texting could have gone on beyond 6.12, but if that's the case, clearly for the purposes of the trial court, and for us too, there has to be some expert testimony in the record to indicate otherwise, it seems to me, her case is weakened by the phone records. I quite agree. In other words, if we know that she's been texting thereabouts prior to the phone call, maybe there is an inference she was texting during the accident with the phone records saying nothing beyond 6.12. Forget it. Was there any testimony to support her supposition that texting could have occurred beyond 6.12 and not show up in the records? No. The offer of proof that was made at trial did not include the evidence deposition of Ashley Ramos. That was never offered by plaintiff at trial. And Ashley Ramos is who? She is the Sprint representative who testified as a records custodian. I don't recall any testimony by her that would rise to the level of the expert testimony that you're talking about in terms of what's possible. Was there any testimony in that about distinction between texting and phone calls? I believe it just confirmed the fact that the records don't contain any times for texting, but they do contain times for the telephone calls and the meaning of when a full minute is charged for a call, the fact that that is actually up to a minute. It can be one second or it can be 60 seconds, but it all gets billed as a minute. That was not submitted to the court in support of the motion? No. I believe that was in the affidavit of Ashley Ramos that was attached to the cell phone records that were supplied to the trial court in support of the motion to amend and the motion for partial summary judgment. Okay. But the evidence deposition testimony was never presented to the trial court at trial. Okay. Plaintiff has forfeited the issues related to amendment of the pleadings, denial of motion for new trial and failure to give jury instructions on the wireless telephone statute. As the court's aware, forfeiture is a limitation on the parties, not on the court. Why did she forfeit it? What's your theory? What is your theory as to why it was forfeited? Well, okay, with respect to the amendment of the pleadings, again, they filed an amended complaint that did not include or reference the prior attempted claims for willful and wanton conduct or punitive damages. So they're arguing this is a boxcroft issue? Yes. In addition, there was no appellate record of the trial court's reasons for denying the motion from which this court could review. With respect to the request for no trial, again, there's no record of the hearing on the post-trial motion. Again, no basis for this court to determine that the trial court abused its discretion in denying the motion for new trial, and that is the standard of abuse of discretion. With respect to the jury instructions, plaintiff argues in their brief that the court should have sua sponte instructed the jury on the wireless telephone statute, but no such instruction was ever offered at trial. Same thing with the instruction number 22, the duty to refrain from willful and wanton conduct. That was not raised in the post-trial motion. So those were the bases for our arguments on those issues. But either way, whether this court decides the issues that plaintiffs have raised on appeal based on forfeiture or based on consideration of the merits, the result is the same. The judgment should be affirmed because plaintiff's arguments have no substantive merit when we look at the evidence that was before the trial court at each relevant stage of the proceeding. When the trial court considered the plaintiff's request to amend the pleadings it had before it the police report concerning the accident, the defendant's cell phone records, the defendant's deposition, the deposition of another witness, of two witnesses as well. The deposition of Jenna Patrick, who was one of the people who the record showed the defendant had some telephone call with at least,  and the affidavit of John Sines, the defendant's father, whose number was also referenced in the records. The plaintiff did rely before the trial court on the police report's assertion that the accident occurred at 6-15 and then used the cell phone records to argue that the defendant was using her cell phone at the time of the accident. There are two problems with that argument. First of all, the records presented to the trial court didn't actually support that conclusion. And the use of a cell phone, even if proven, wouldn't rise to the level of Wilf and Wynne conduct or support a claim for punitive damages. Then why not? Well, mere inattention, momentary inattention to the roadway is not the same as consciously disregarding a known risk. And that's the standard for Wilf and Wynne conduct. I note in the reply brief that done following the effort of Mr. O'Brien, the plaintiff asserts that the Foxcroft Act does not apply to the denial of a 2-604.1 motion. It's applicable here. Now, since that was in your reply brief, you didn't have an opportunity to respond to it. But that looks to me to be a pretty good argument. Why isn't the plaintiff correct that when you're talking about an allegation such as Wilf and Wynne misconduct, that a plaintiff is required to move for leave to add, and you have a hearing as occurred in this case and was denied, it seems to me that the whole idea between Foxcroft and his later progeny really doesn't fit, which is the argument that the plaintiff has made. And you didn't have an opportunity to respond to it because that was the reply brief, but here's your chance. All right. Well, I appreciate that, Your Honor. That argument was actually referenced in the Gaylor case, which is also cited both in our brief and in the claim's reply brief. The majority in that case actually rejected the special concurrence and suggestion that the preservation can result from rejection of a proposed amended complaint. So although it's not a dismissal of the claim, the effect is the same. The trial court has rejected the claims as a matter of law. And there are three ways that you can preserve that, three very simple ways to preserve it. You can either stand on the rejected counts, take a voluntary dismissal and appeal, or you can just file your amended pleading that realleges or reincorporates those same allegations. Or you can perfect an interlocutory appeal from the dismissal order. Well, Gaylor, we're not required to file a majority opinion, and why doesn't Justice McLaren have the better of the argument, especially concurring opinion, saying plaintiff did all plaintiff needs to do in this case, this is a special category, and the issue's been preserved? Well, the Foxcroft case, and I think it's also the Von Hollen case, in both cases the Supreme Court makes clear that this isn't a difficult thing to do to preserve these claims. In fact, they use the language of waiver rather than mere forfeiture. So I think we're at the point where it's expected that litigants will do these things if they intend to preserve these claims. But I take it your position is we don't have to reach this because the plaintiff shouldn't lose anyone. That's correct. Whether this court decides on a forfeiture or the merits, I think the judgment should be affirmed. The defendant's cell phone records in this case affirmatively show that there were no telephone calls placed to or sent from defendant's cell phone in the three to four minutes prior to the accident or in the three minutes afterward. The records contain no information as to when any texts were sent or received. The records only disclose a total number of messages sent and received by the phone over a 30-day period that encompasses both before and after the accident. A majority of that period is actually after the accident. We just can't draw anything probative from that. A jury would have to engage in informatical speculation and conjecture to determine, based on the cell phone records, that my client was texting at the precise time of this accident. We also have the undisputed witness testimony from my client that she wasn't texting or speaking on the telephone, either at the time of the accident or immediately before. We took the deposition of Jenna Patrick, who was one of the people whose telephone numbers were referenced in my client's cell phone records. She testified that she wasn't speaking with the defendant on the telephone at the time of the accident. We have the affidavit of John Sines, the other person whose telephone number was referenced in defendant's cell phone records. He also testified that he did not speak to his daughter at the time of the accident, but he spoke to her several minutes afterward. That would be the 618 telephone call from defendant's cell phone to her father's cell phone. All of the witness testimony is perfectly consistent with the cell phone records that were produced, and that there simply was no dispute of fact that was raised by the cell phone records because it's perfectly consistent with all of the witness testimony. Is it your position that the issue before the trial court on obstructing the jury in willful misconduct was discretionary under Section 2-604.1? On obstructing the jury? Was it standard review? Should we review that preferentially as a question of abuse of discretion by the trial court in denying the motion for the plaintiff to amend the complaint to add a claim for punitive damages? Yes. That's a little bit trickier. The standard of review generally for amendment of pleadings is abuse of discretion, and that is the standard that plaintiff argued in their opening brief. In reply, plaintiff re-characterizes the motion for leave to amend as one under Section 2-604.1, even though plaintiff never referenced that statute in the motion or asked for an evidentiary hearing under Section 2-604.1. The Stoykovich case the plaintiff cites in their reply brief does set forth the de novo standard where the consideration of the Section 2-604.1 motion is based only on evidentiary submissions, and there's no testimony, no witness credibility judged by the trial court. That is accurate. But the problem here is that plaintiff never referenced Section 2-604.1 at the trial court and didn't do anything to preserve or appeal that interlocking court decision. That's the issue that your claim that you forfeited this matter by not including it in the post-trial motion. Assuming it's not forfeited, what is our standard of review? Well, with respect to the punitive damages portion only, that would be, I would have to say de novo. If we're going to view this as a Section 2-604.1 hearing, which was never argued at the trial court. So, you know, the trial court didn't have an opportunity to consider it on that basis. But just with respect to amendment of the pleadings for leave to add the willful and wanton count, that portion of it, I would argue, is the usual abuse of discretion standard. It's only the punitive damages. My reading of the story is... I'm not sure I understand the difference. It seems to me we're talking about the same thing, aren't we? Well... If they are permitted to add willful and wanton misconduct, then they can get punitive damages, can't they? Well, the punitive, I would argue that's not necessarily the case. Punitive damages require, you know, a heightened mental state. While willful and wanton conduct can give rise to punitive damages, it's not the case that it's automatic. Nothing's automatic, but I mean, if a complainant was permitted to add willful and wanton misconduct, isn't the jury then to be instructed on punitive damages? Only if the trial court has found, after the Section 2-604.1 hearing, that the evidence would present a reasonable likelihood of proving that at trial. I would make a distinction between just being permitted to allege a willful and wanton count and being able to make that request for punitive damages at trial. I think there is a further burden to meet in order to make that request at trial. Something new to me, but maybe there is. Go ahead. I see that I'm running low on time. Very briefly, I would like to address a couple of points that were raised in plaintiff's initial argument. There was no testimony that defendant was on the phone while she was driving prior to the accident. Again, that is speculation based only on the records and pure assumptions about what defendant did after leaving the softball game. Defendant testified in her deposition that she did apply her brakes. That is at page 346 of the record. Defendant also testified that if she looked down, it was likely that she was changing the channel on the radio. That is at page 348 of the record. There are explanations that are consistent with defendant not using her cell phone at the time of the accident. I see that I'm out of time. I would, defendant, request that this court confirm the trial court's judgment. Thank you. Thank you very much. Ms. Duggan, do you have some vote for us? First, let me clarify that it is our position that any time you use a cell phone while you're driving, you're committing a willful act. So it would be willful misconduct in all instances? I believe so, yes. And also, with regards to Ms. Ramos, who testified at an evidence deposition regarding the Sprint cell phone records, she was listed as an expert. There was an evidence deposition taken of her testimony, and in that deposition, she stated that although the records that we have showing those over 9,000 text messages cannot be pinpointed, what that means is that they could have occurred at any time, at any time during that 30-day period. I don't understand what that means. So she says there were 9,000 messages over 30 days, and we don't know when they were made? There's no way of knowing because, as I said, the data is not saved after 60 days. But it could have been made at any time during that 30-day period. So, again, it's testimony from an expert on those cell phone records that could have been presented to the jury and allowed jury to draw inferences. Well, I bet still it seems to me if the key or whole argument is she was texting at 615, the question had to be asked of somebody when you presented these records. Does that mean, Ms. Expert, that she could have been texting and the phone records wouldn't have showed it? Well, that question could have been asked, but we know that the phone records are not going to show it, that we have, because that data is not contained or saved beyond 60 days. We got the records long after the 60-day period. So there is no way how she would have answered. And I believe what she stated in her evidence deposition is that... Was that in the offer of proof? I believe it was, Judge. Again, I apologize because I was not counsel at the time. But my understanding is that it was offered during the offer of proof that she would be... I don't know if the evidence deposition during the offer of proof at trial that was made before, while Ms. Sines was on the stand. Well, we're very sensitive about reversing trial courts based on arguments that never heard. I understand. I believe my reflection and what I'm understanding is that the testimony or the argument that was given by plaintiff's counsel at that moment for the offer of proof was what the cell phone records and the accompanying testimony would be and what it would show, which is what I just stated. So you don't believe that the actual deposition itself was presented? I don't. I honestly don't know. So I can't... It just seems so speculative to me. I mean, let's say I'm in an accident and someone says I was looking down immediately prior to it and my cell phone is in the vehicle and they pull my records and see that I've sent 10,000 texts over the last 30 days. How does that even come close to a reasonable inference that I was texting at the time of the accident? Well, I think accompanying that with the facts that we know from the records, which is the number of calls and the calls that were received just minutes before the time reflected on the accident report of 6-15 and thereafter, coupled with the fact that she was... acknowledges that she was looking down, that there was no braking, that the impact was at 40 miles per hour. But looking down could have been to adjust the temperature... It could have been. ...that goes in the car or my console, that's where the radio is, changing channels. That wouldn't have been in violation of the statute, would it? I don't disagree with Your Honor. It absolutely could have been, and she would have been allowed to testify to that at trial. But our argument is that the jury should have been allowed to hear all these facts and make what reasonable inferences a jury is allowed to make from the facts. I would like to also just address a couple of the arguments that defendants' counsel just made, and that is in their brief also, specifically arguing that... arguing that there was a waiver or forfeiture of any argument. Again, the plaintiff had cited Foxcroft and, as was just discussed, specifically Justice McLaren's especially concurring opinion in Gaylor that... from the attempt to file the amended complaint containing the cause of action, not from the trial court's decision to grant or deny leave to file it. Our case is very distinguishable, in any case, from Foxcroft and Bonham because neither of those cases involved plaintiff's motion for leave to file an amended complaint. We were essentially... We're out of time. I know, sorry. Thank you for your arguments. Thank you. The case is submitted, and the Court stands in recess. Thank you.